IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| CHARLES DEWITT,<br><br>Plaintiff,<br><br>vs.<br><br>BEST BUY STORES, L.P. and RFA BRANDS, LLC,<br><br>Defendants. | Cause No. CV-22-75-H-BMM<br><br>ORDER |

## INTRODUCTION

Plaintiff Charles DeWitt ("DeWitt") filed this products liability action against Best Buy Stores, L.P. ("Best Buy") and RFA Brands, LLC ("RFA") (collectively, "Defendants"). (Doc. 1-1.) RFA now moves to dismiss for lack of personal jurisdiction. (Doc. 15.) The Court conducted a hearing on November 10, 2022.

1

## FACTUAL AND LEGAL BACKGROUND

DeWitt bought a USB powerbank charger ("powerbank") on July 8, 2019. (Doc. 1-1 at 3.) A Best Buy store in Washington state sold the powerbank to DeWitt. (*Id.*) RFA manufactured the powerbank. (*Id.*) DeWitt resides in Lewis and Clark County, Montana. (*Id.* at 2.) DeWitt alleges that the powerbank "exploded in his face and nearly burnt his house down" on November 15, 2021. (*Id.* at 1, 3–4.) DeWitt received oxygen treatment for smoke and chemical inhalation and sought further treatment at the hospital. (*Id.* at 4.) DeWitt's house also sustained "extensive property damage." (*Id.*)

The United States Consumer Product Safety Commission issued a national recall of RFA USB chargers on October 27, 2021. (*Id.* at 3.) This recall included DeWitt's unit. (*Id.*) The recall notice provided: "Hazard. The powerbank's lithium-ion battery can overheat and ignite, posing fire and burn hazards." (*Id.*) The notice further specified that RFA had received 30 reports of the powerbanks overheating. (*Id.*) DeWitt alleges that he received no notice of the recall or the danger that the powerbank posed before his powerbank's November 2021 explosion. (*Id.*)

DeWitt brought his state-court action on June 21, 2022, in the First Judicial District Court, Lewis and Clark County. (Doc. 1-1.) DeWitt's claims include strict products liability and negligence against both RFA and Best Buy. (*Id.* at 4–7.) Best Buy removed the case to federal court on September 8, 2022. (Doc. 1.) DeWitt

2

moved to remand the action to state court on September 14, 2022. (Doc. 2.) Best Buy filed an Amended Notice of Removal on September 28, 2022. (Doc. 10.) RFA filed a motion to dismiss DeWitt's action for lack of personal jurisdiction on September 30, 2022. (Doc. 15.) DeWitt opposes the motion to dismiss. (Doc. 19.)

## LEGAL STANDARDS

### I. Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The rule "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989) (citations omitted). In evaluating a 12(b)(6) motion, a court "must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *Kwan v. Sanmedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (quoting *Turner v. City & Cnty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015)).

### II. Motion to Remand

District courts strictly construe the removal statute and must reject federal jurisdiction if any doubt as to the right of removal exists. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). A party seeking removal bears the burden to "prove that jurisdiction is proper, in particular that the citizenships of the parties are completely diverse." *State Farm Gen. Ins. Co. v. Best Buy Stores, L.P.*, 2016 U.S.

Dist. LEXIS 142118, *1 (C.D. Cal. Dec. 12, 2016) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857–58 (9th Cir. 2001)). A party seeking removal must plead the citizenship of all of its members. 28 U.S.C. § 1332; *Carden v. Arkoma Assocs.,* 494 U.S. 185, 196 (1990).

## DISCUSSION

### I. Motion to Dismiss

Neither party argues that RFA engages in "systematic and continuous" activities as to subject RFA to general personal jurisdiction in Montana. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–19 (1945). The Court need only analyze Montana's specific personal jurisdiction over RFA.

### A. Montana's Long-Arm Statute.

Montana's long-arm statute "permit[s] the exercise of personal jurisdiction over nonresident defendants to the maximum extent permitted by federal due process." *King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 578 (9th Cir. 2011); Mont. R. Civ. P. 4(b)(1). The long-arm statute provides that "[a]ny person is subject to the jurisdiction of Montana courts as to any claim for relief" flowing from the transaction of any business within Montana." Mont. R. Civ. P. 4(b)(1)(A). The long-arm statute further provides for personal jurisdiction arising from "the commission of any act resulting in accrual within Montana of a tort action." *Id.* 4(b)(1)(B).

4

DeWitt asserts that Montana's long-arm statute applies to RFA because it has transacted business in Montana and because DeWitt's tort action accrued within Montana. (Doc. 19 at 4.) RFA does not contest that Montana's long-arm statute applies. (Doc. 16 at 11.) RFA argues instead that any exercise of personal jurisdiction by the Court would violate its constitutional due process rights. (*Id.* at 11–12.) The Court finds that Montana's long-arm statute applies in light of RFA's admission. Mont. R. Civ. P. 4(b)(1).

### B. Due Process Analysis.

The Court next must consider whether Montana's exercise of personal jurisdiction over RFA would "violate traditional notions of fair play and substantial justice." *Grizzly Sec. Armored Express, Inc. v. Armored Grp., LLC*, 255 P.3d 143, 149 (Mont. 2011) (internal citations omitted). Courts in the Ninth Circuit apply the following three-part test to determine whether specific personal jurisdiction comports with due process: (1) the defendant must have "purposefully avail[ed]" and/or "purposefully direct[ed]" its activities to the forum state; (2) the claim must have arisen from or relate to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with "fair play and substantial justice." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *Johnson v. UBS AG*, No. 20-56253, 2021 WL 2935953, at *2 (9th Cir. Jul. 21, 2021).

A plaintiff carries the burden of establishing the first two prongs. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985). The burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would prove unreasonable. *Schwarzenegger*, 374 F.3d at 802. RFA argues that DeWitt has failed to establish either of the two prongs necessary for a *prima facie* showing of personal jurisdiction. (Doc. 22 at 2–3.)

i. **Whether RFA purposely directed its activities towards Montana or purposefully availed itself of Montana.**

RFA asserts that the purposeful availment—rather than the purposeful direction—analysis applies because DeWitt's action involves products liability. (Doc. 22 at 2 (citing *Cameron v. Thomson Int'l, Inc.*, No. CV 21-17-BLG-SPW-TJC, 2021 WL 3409999, *4 (D. Mont. July 19, 2021) (internal citation omitted)).) *Cameron* involved a products liability claim brought by a Montana resident against an out-of-state corporation. *Id.* at *1–2. The district court used the purposeful availment test, noting that "courts generally apply the purposeful availment test to products liability cases." *Id.* at *4 (citing *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 878 (2011)).

DeWitt argues that RFA's contacts with Montana satisfy both the purposeful availment and purposeful direction standards. (Doc. 19 at 7, 11.) DeWitt notes that the Ninth Circuit recently applied the purposeful direction analysis in *Will Co. v.*

6

*Ka Yeung Lee*, 47 F.4th 917, 922 (9th Cir. 2022). *Will Co.* proves inapposite, however, because it involved a copyright dispute and not a products liability claim. *Id.* at 919. The Court will apply the "more general" purposeful availment analysis to RFA's contacts. *Cameron*, 2021 WL 3409999, at *4; *J. McIntyre*, 564 U.S. at 878.

A nonresident defendant purposefully avails itself of the laws of the forum state "when it takes voluntary action designed to have an effect in the forum." *Buckles v. Cont'l Res., Inc.*, 462 P.3d 223, 231–32 (Mont. 2020). A defendant must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Ford Motor Co. v. Mont. Eighth Judicial Dist.*, 592 U.S. ___, 141 S. Ct. 1017, 1025 (2021) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984). The contacts must show that the defendant deliberately reached beyond its home and exploited the market in Montana or created a contractual relationship there. *Ford*, 592 U.S. at ___, 141 S. Ct. at 1025 (citation omitted).

A manufacturer may purposefully avail itself of a forum state without directly selling or distributing its products there. *World-Wide Volkswagen Corp. v. Woodson* determined that an Oklahoma court could not assert jurisdiction over a

7

New York car dealer merely because a car it sold later caught fire in Oklahoma. 444. U.S. 286, 295 (1980). The U.S. Supreme Court explicitly distinguished the dealer's position from that of the other defendants—the manufacturer and the nation-wide importer—neither of which contested personal jurisdiction. *Id.* at 297. "[I]f the sale of a product . . . arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in [several or all] other States," personal jurisdiction proves proper in the state where an injury from an allegedly defective product occurred. *Id.*

RFA asserts that it has not purposefully availed itself of Montana because it does not have employees, agents, or a physical place of business in Montana; does not conduct any of its manufacturing or testing in Montana; and does not target its products "towards Montana in particular." (Doc. 16 at 15–16.) RFA also notes that it has not entered into contracts with any Montana corporations. (*Id.*) Best Buy, a multinational chain, distributes and retails RFA's products in Montana. (*Id.* at 16.)

DeWitt counters that RFA purposefully has availed itself of Montana as a forum. DeWitt alleges that RFA "has direct to consumer sales through its website," that it "broadcasts itself nationwide to consumers with product reviews," and that it has produced or received national press. (Doc. 19 at 9.) DeWitt additionally alleges that RFA's Declaration of Jan Lower (Doc. 16-1) omits critical information relating to RFA's purposeful availment of Montana. (Doc. 19 at 16–17.)

The Court agrees with DeWitt that RFA purposefully has availed itself of Montana. RFA coordinates with major retailers to distribute and sell its products nationwide, including in Montana. Montana consumers may purchase RFA products in person and online from nine major retailers across the state, including Best Buy, Target, Walmart, The Home Depot, and Costco. (*Id.* at 12.) RFA's website contains links to purchase its products from these retailers. *See Where to Buy: Retailers & Distributors That Carry myCharge*, MYCHARGE, https://mycharge.com/pages/retailers (last visited Nov. 30, 2022). The website also states that RFA ships to all U.S. states. *General Questions*, MYCHARGE, https://support.mycharge.com/hc/en-us/articles/201285445-General-Questions (last visited Nov. 30, 2022) ("Where do you ship? Currently, we ship to the United States. We hope to expand this soon!").

The Consumer Product Safety Commission has recalled 67,000 RFA-manufactured units across seven powerbank models. *See myCharge Recalls Powerbanks Due to Fire and Burn Hazards*, U.S. CONSUMER PROD. SAFETY COMM'N, https://www.cpsc.gov/Recalls/2022/myCharge-Recalls-Powerbanks-Due-to-Fire-and-Burn-Hazards (last visited Nov. 30, 2022). RFA has not disclosed the number of powerbanks recalled in Montana. (Doc. 19 at 16–17.) The Court finds it reasonable to infer, however, that at least some of these hazardous products have entered Montana.

9

RFA's contacts with Montana do not appear to be "random." *Keeton*, 465 U.S. at 774. The sale of DeWitt's powerbank was "not an isolated occurrence." *Ford*, 592 U.S. at ___, 141 S. Ct. at 1027 (internal citation and quotation omitted). The sale instead "ar[ose] from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in [several or all] other States." *Id.* (quoting *World-Wide Volkswagen*, 444 U.S. at 297). RFA purposely availed itself of Montana and should reasonably anticipate being haled into Montana's courts. *Ford*, 592 U.S. at ___, 141 S. Ct. at 1027–28, 1032; *Buckles*, 462 P.3d at 231–32.

### ii.   **Whether DeWitt's claim proves sufficiently connected to RFA's forum-related activities.**

General contacts with a forum alone prove insufficient to satisfy due process. *Buckles*, 462 P.3d at 228. The action must "arise out of or relate to the defendant's contacts with the forum." *Id.* (quoting *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. ___, 137 S. Ct. 1773, 1786 (2017)). The U.S. Supreme Court recently analyzed this prong at length in *Ford*, 592 U.S. at ___, 141 S. Ct. at 1026–32. Plaintiffs brought products liability claims against Ford after a pair of car accidents. *Id.* at 1022. The plaintiffs brought suit in Montana and Michigan, the two states where the accidents had occurred. *Id.* Ford argued that the respective states lacked personal jurisdiction because the particular vehicles involved in the

accidents had not been purchased, sold, or manufactured in the forum states. *Id.* Ford conceded that it purposefully had availed itself of conducting activities in the forum states through its business activities, but argued that the activities failed to connect to the suits. *Id.* at 1026.

Ford insisted that jurisdiction attaches "only if the defendant's forum conduct *gave rise* to the plaintiff's claims." *Id.* (italics in original). The U.S. Supreme Court noted that the "causation-only" approach had no support from case precedent: "None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do." *Id.* The most common formulation of the rule "demands that the suit 'arise out of *or relate to* the defendant's contacts with the forum.'" *Id.* (italics in original). "[S]ome relationships will support jurisdiction without a causal showing." *Id.*

RFA asserts that DeWitt's claims do not arise out of RFA's forum-related activities for substantially the same reasons as those alleged for the purposeful availment analysis. (Doc. 16 at 18–19.) RFA focuses on the role Best Buy plays in shipping and retailing RFA's products in Montana. (*Id.*) RFA also argues that DeWitt cannot establish the requisite causal relationship between RFA's activities and DeWitt's injury because he purchased the powerbank outside Montana. (*Id.* at 19.)

RFA's argument replicates the line of reasoning the U.S. Supreme Court

11

squarely rejected in *Ford*. 592 U.S. at ___, 141 S. Ct. at 1026–29. DeWitt need not demonstrate that he purchased the powerbank in Montana or that RFA directly sold it to him. DeWitt resides in Montana. The powerbank allegedly exploded at DeWitt's house in Helena, Montana. RFA contracts with nationwide third-party retailers, ships its products to all 50 states, including Montana, and has posted its own recall notice that 67,000 of its products pose an explosion hazard. (Doc. 19 at 13.)

As in *Ford*, this action "might never have arisen, except for [RFA's] contacts with" Montana. 592 U.S. at ___, 141 S. Ct. at 1029. RFA's efforts to serve the Montana market indirectly "might turn any resident of Montana" into the owner of an RFA-manufactured product, "even when [brought] from out of state." *Id.* RFA's relationship to DeWitt's claim "is close enough to support specific jurisdiction." *Id.* at 1032 (internal citation omitted).

    iii.    **<u>Whether personal jurisdiction over RFA proves reasonable.</u>**

The Ninth Circuit evaluates the following seven factors to determine whether the exercise of personal jurisdiction over an out-of-state defendant proves reasonable: "(1) the extent of the defendant's purposeful interjection into Montana; (2) the burden on defendant of defending in Montana; (3) the extent of the conflict with the sovereignty of another possible forum state; (4) Montana's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the

controversy; (6) the importance of Montana to plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Abbey v. Chubb Corp.*, CV 05-23-H-DWM, 2006 WL 8449567, at *3 (D. Mont. Apr. 10, 2006). A court must gauge the reasonableness prong "on a sliding scale in conjunction with the evaluations of the first two prongs." *Id.* The exercise of jurisdiction proves presumptively reasonable "if the first two prongs of the analysis are satisfied." *Id.*

RFA argues that the following considerations support a finding of unreasonableness: (1) that travel to Montana to litigate the action would impose a "harsh burden" on RFA because it maintains no in-state agent or office; (2) that federalism concerns militate against personal jurisdiction; and (3) that Michigan, RFA's principal place of business, offers a separate proper forum. (Doc. 26 at 20–21.)

RFA's protestations fall flat. RFA's burden in having to litigate in Montana proves no greater than the burden DeWitt would face in having to litigate in Michigan or elsewhere. RFA might face a lighter burden, as an allegedly multi-million-dollar corporation, than DeWitt, who is a private citizen. (Doc. 19 at 14.) Moreover, Montana possesses a strong interest in protecting its residents from injury and "providing [its] residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Ford*, 592 U.S. at ___, 141 S. Ct. at 1030 (quoting *Burger King*, 471 U.S. at 473). DeWitt, his treating providers, and the majority of

13

his lay witnesses reside in Montana. (*Id.* at 13–15.) Montana represents the most efficient forum as the case already has been filed here and the early stages of litigation have begun. The sliding scale approach favors DeWitt. *Abbey*, 2006 WL 8449567, at *3.

The extension of subject matter jurisdiction over RFA comports with due process. *Ford*, 592 U.S. at ___, 141 U.S. at 1032. The Court will deny RFA's motion to dismiss.

### C. Jurisdictional Discovery.

DeWitt argues that the Court should allow him to conduct limited jurisdictional discovery if the Court determines it lacks sufficient evidence to rule on RFA's motion to dismiss. (Doc. 19 at 17.) DeWitt asks the Court to allow limited discovery of RFA's "contacts and sales of all products," the number and volume of RFA products directly or indirectly sold to Montanans, and RFA's distributor contracts. (*Id.*)

RFA asserts that jurisdictional discovery would prove improper. (Doc. 22 at 13–14.) RFA contends that DeWitt has failed to articulate what jurisdictional discovery would accomplish apart from a "hunch" that it might uncover relevant facts. (Doc. 22 at 14 (citing *LNS Enterprise LLC v. Continental Motors, Inc.*, 22 F.4th 852, 864–65 (9th Cir. 2022) (citations and quotation marks omitted)).)

The Court declines to order jurisdictional discovery in light of its decision to

deny RFA's motion to dismiss.

## II. Motion to Remand.

DeWitt moved the Court on September 14, 2022, to remand the action to the First Judicial District Court, Lewis and Clark County. (Doc. 2.) DeWitt alleged that Best Buy had failed to plead the citizenship of its members with adequate specificity to establish diversity jurisdiction. (*Id.* at 2–3 (citing *State Farm v. Best Buy*, 2016 U.S. Dist. LEXIS 142118, at *2; *Kanter*, 265 F.3d at 857–58).) Best Buy's initial removal notice indicated that at the time of filing "Best Buy was a Virginia limited partnership business with its principal place of business in Minnesota." (Doc. 1 at 3.) Best Buy's September 28, 2022, amended removal notice states the citizenship of Best Buy, its general partner, its limited partner, RFP, and RFP's member-owners. (Doc. 10 at 3–4.)

DeWitt conceded during the November 10, 2022, motion hearing that Best Buy's amended removal notice cured any pleading defects. The Court will deny DeWitt's motion to remand (Doc. 2) as moot.

Accordingly, **IT IS ORDERED:**

1. RFA's Motion to Dismiss (Doc. 15) is **DENIED**; and

2. DeWitt's Motion to Remand (Doc. 2) is **DENIED** as moot.

DATED this 30th day of November, 2022.

*/s/ Brian Morris*

Brian Morris, Chief District Judge
United States District Court